IN THE SUPREME COURT OF NORTH CAROLINA

No. 101PA14

(Filed 21 August 2015)

LEXISNEXIS RISK DATA MANAGEMENT INC., a Florida Corporation, and LEXISNEXIS RISK SOLUTIONS INC., a Georgia Corporation

v.

NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS; MARION R. WARREN,[1] in his official capacity as the interim Director of the North Carolina Administrative Office of the Courts; and JENNIFER KNOX,[2] in her official capacity as the Clerk of the Wake County Superior Court

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 754 S.E.2d 223 (2014), affirming in part and reversing and remanding in part an order entered on 8 February 2013 by Judge James E. Hardin, Jr. in Superior Court, Wake County. Heard in the Supreme Court on 24 February 2015.

*Nelson Mullins Riley & Scarborough LLP, by Reed J. Hollander; and Meyer, Klipper & Mohr, PLLC, by Christopher A. Mohr, pro hac vice, for plaintiff-appellees.*

*Roy Cooper, Attorney General, by Grady L. Balentine, Jr., Special Deputy Attorney General, for defendant-appellants N.C. Administrative Office of the Courts and Marion R. Warren.*

*Arnall Golden Gregory LLP, by W. Jerad Rissler, for Consumer Data Industry Association, amicus curiae.*

---

[1] The Honorable Marion R. Warren, who took office as interim Director of the Administrative Office of the Courts on 1 May 2015, replaced former defendant the Honorable John W. Smith, II. *See* N.C.G.S. § 1A-1, Rule 25(f) (2013); N.C. R. App. P. 38(c).

[2] The Honorable Jennifer Knox, who took office as Clerk of Wake County Superior Court on 1 January 2015, replaced former defendant Nancy Lorrin Freeman. *See* N.C.G.S. § 1A-1, Rule 25(f); N.C. R. App. P. 38(c).

*Stevens Martin Vaughn & Tadych, PLLC, by Hugh Stevens, for The News and Observer Publishing Company, Capitol Broadcasting Company, Inc., Time-Warner Entertainment-Advance Newhouse Partnership, DTH Media Corporation, and North Carolina Press Foundation, Inc., amici curiae.*

*Kilpatrick Townsend & Stockton, LLP, by Phillip A. Harris, Jr. and Joseph S. Dowdy, for Associate Professor Ryan Thornburg, amicus curiae.*

EDMUNDS, Justice.

In this case, we consider whether our state's Public Records Act, N.C.G.S. §§ 132-1 to -10 requires the North Carolina Administrative Office of the Courts to issue a copy of the Automated Criminal/Infraction System to a private party. We hold that N.C.G.S. § 7A-109(d), addressing "remote electronic access" to court records, is a more specific statute that overrides applicability of the Public Records Act here. In addition, we conclude that the legislature intended that remote electronic access to the Automated Criminal/Infraction System be available solely through nonexclusive contracts, as provided in section 7A-109(d). Accordingly, we reverse the decision of the Court of Appeals.

The Automated Criminal/Infraction System (ACIS) is an electronic compilation of all criminal records in North Carolina. While the North Carolina Administrative Office of the Courts (AOC) administers and maintains ACIS, the information contained in ACIS is entered on a continuing, real-time basis by the individual Clerks of Superior Court, or by an employee in that Clerk's office, from the physical records maintained by that Clerk. Any subsequent modifications to that

information are under the exclusive control of the office of the Clerk that initially entered the information, so that personnel in one Clerk's office cannot change records entered into ACIS by personnel in a different Clerk's office. In other words, the information in ACIS both duplicates the physical records maintained by each Clerk and constitutes the collective compilation of all records individually entered by the one hundred Clerks of Court. ACIS includes information not subject to disclosure, and not every employee in each Clerk's office can access all the information in ACIS.

The parties do not dispute that the public has various avenues of access to the information in ACIS that is subject to disclosure. Each Clerk's office possesses a public terminal, commonly known as a "green screen," that any member of the public may use to search within ACIS. Members of the public can also access information that has been entered into ACIS either by directly viewing in the appropriate Clerk's office the physical records from which ACIS information is derived or by requesting copies of those records from that Clerk's office. Private parties may obtain remote electronic access to ACIS by entering into a contract with the AOC, as permitted by N.C.G.S. § 7A-109(d).

Plaintiffs, two private corporations that aggregate public information in their private databases, including information gleaned from criminal records, and then sell access to their databases to public and private entities, seek a copy of the ACIS database itself via the Public Records Act. On 23 September 2011, plaintiffs sent written public records requests to then-AOC Director Judge John W. Smith, II and

then-Wake County Clerk of Superior Court N. Lorrin Freeman. Plaintiffs' requests to both were virtually identical, seeking an index of all computer databases created or compiled by the recipient's office and "[t]he entire computer database(s) which contain criminal records information" available to the recipient of the request. Plaintiffs asked that the material be supplied in hard copy and in electronic formats.

Both recipients interpreted the request as seeking the information contained in ACIS. The AOC responded by sending plaintiffs' attorney a compact disk containing copies of the "indexing done to date for databases maintained by the NCAOC and subject to G.S. § 132-6.1." However, the AOC declined to produce an index of the ACIS database, pointing out N.C.G.S. § 132-6.1(b), a provision in the Public Records Act that addresses such indices, does not apply to ACIS because ACIS predated enactment of that statute. *See* N.C.G.S. § 132-6.1(b) (2013). The AOC also declined to provide a copy of ACIS, asserting that the individual Clerks of Superior Court are custodians of the records and the data in those records, adding that the AOC merely "created and maintains ACIS in its administrative support role for the [C]lerks." In addition, the AOC pointed out that distribution of and access to ACIS is accomplished through non-exclusive licensing agreements, citing N.C.G.S. § 7A-109(d).

Defendant Freeman responded separately, denying that her office possessed any records responsive to plaintiffs' request. While acknowledging that her office "is responsible for data entry into a number of case index systems," she stated that her

office does not maintain those databases and is incapable of providing copies of those systems.

On 13 October 2011, plaintiffs filed suit in Superior Court, Wake County, seeking an order requiring production of the requested materials pursuant to N.C.G.S. § 132-9(a). Plaintiffs requested that the court declare "that the ACIS database is a public document or public information as defined by N.C. Gen. Stat. § 132-1;" declare that defendant Smith or defendant Freeman, or both, are "custodian[s] of the ACIS database and of the electronic criminal records information contained therein;" and order either or both defendants "to provide to Plaintiffs a complete copy of the ACIS database."

On 15 December 2011, defendants filed their joint answer. Defendants first responded that, unlike criminal records, ACIS is not subject to the Public Records Act. Second, defendants claimed that each individual Clerk of Court is a custodian of the criminal records relating to his or her county but is unable to make an electronic copy of the entire ACIS database, while defendant AOC has possession and control of ACIS but is not the custodian of the criminal records contained within it.

On 6 February 2012, plaintiffs filed a Motion for Judgment on the Pleadings. Following a 10 August 2012 hearing, the trial court on 31 January 2013 issued an order denying plaintiffs' motion, granting judgment for defendants on their responsive pleadings, and dismissing the case. In its order, the trial court concluded as a matter of law that, while defendant Freeman was the custodian of criminal

records in Wake County, she did not violate the Public Records Act because her office "does not compile or create databases for criminal records information." The trial court further concluded as a matter of law that defendant Smith did not violate the Public Records Act because the "AOC is not the custodian of the criminal records stored in the ACIS database," even though the AOC "administers, supports, and maintains" ACIS. Finally, the trial court concluded as a matter of law that "[r]equiring . . . AOC to provide a copy of the entire ACIS database would negate the provisions of N.C. Gen. Stat. § 7A-109(d)."

The Court of Appeals affirmed the trial court's conclusions and judgment as to defendant Freeman but reversed the trial court as to defendants Smith and the AOC. *LexisNexis Risk Data Mgmt. Inc. v. N.C. Admin. Office of the Courts*, ___ N.C. App. ___, 754 S.E.2d 223 (2014). Noting that the parties agreed that the individual criminal records maintained by Clerks of Court are public records and that each Clerk is the custodian of the records in that Clerk's office, the Court of Appeals found that "once the [C]lerks of [C]ourt enter information from their criminal records into ACIS, the database becomes a new public record 'existing distinctly and separately from' the individual criminal records from which it is created." *Id.* at ___, 754 S.E.2d at 227. The Court of Appeals then concluded that ACIS, having incorporated that newly-entered information, is an "electronic data-processing record" under section 132-1(a) and thus is a public record subject to disclosure under the Public Records Act. *Id.* at ___, 754 S.E.2d at 227. The Court of Appeals next concluded that the

source of the information entered into ACIS was immaterial because the Public Records Act refers to custodians of records, not custodians of information, and the AOC was the custodian of the newly-created public record. *Id.* at ___, 754 S.E.2d at 227-28. The Court of Appeals further noted that each Clerk's custodianship of the criminal records from which ACIS is compiled is immaterial because plaintiffs were seeking a copy of ACIS, not copies of the criminal records. *Id.* at ___, 754 S.E.2d at 227-28. That court also found irrelevant AOC's argument that employees of individual Clerk's offices entered data into ACIS and could later modify it, observing that "the clerks have acted at the direction of the AOC." *Id.* at ___, 754 S.E.2d at 228 (relying upon *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992)). The Court of Appeals thus held that ACIS is a public record and AOC is its custodian. *Id.* at ___, 754 S.E.2d at 228.

Finally, the Court of Appeals rejected the trial court's conclusion that granting access to plaintiffs would "negate" N.C.G.S. § 7A-109(d). *Id.* at ___, 754 S.E.2d at 228. The Court of Appeals found that this provision and the Public Records Act were not mutually exclusive but were instead complementary means of accessing judicial records. *Id.* at ___, 754 S.E.2d at 228-29 ("The plain language of this subsection simply allows the AOC to offer an additional method of access to 'court records' . . . ."). Again citing *Poole*, the Court of Appeals concluded that the language of section 7A-109 did not provide a "clear statutory exemption or exception" that excluded ACIS from the Public Records Act. *Id.* at ___, 754 S.E.2d at 229 (quoting *Poole*, 330 N.C. at

486, 412 S.E.2d at 19). We allowed the Petition for Discretionary Review filed by defendants Smith and the AOC.

Defendants contend both that the Court of Appeals opinion negates N.C.G.S. § 7A-109 and that the ongoing process of making additions and amendments to ACIS does not create a new public record distinct from the original records entered by the Clerks of Court. Accordingly, we must examine the relationship between the Public Records Act and N.C.G.S. § 7A-109, applying de novo review. *In re Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012) (citation omitted).

In their initial letters to defendants and in their complaint, plaintiffs relied on the Public Records Act and did not cite section 7A-109. The Public Records Act, codified in Chapter 132 of the General Statutes, generally governs access to public records in North Carolina, and section 132-6(a) states that "[e]very custodian of public records shall permit any record in the custodian's custody to be inspected and examined at reasonable times and under reasonable supervision by any person, and shall . . . furnish copies thereof." N.C.G.S. § 132-6(a) (2013). This Court has consistently found that "it is clear that the legislature intended to provide that, as a general rule, the public would have liberal access to public records." *News & Observer Publ'g Co. v. State ex rel. Starling*, 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984) (citation omitted); *see also State Emps. Ass'n of N.C. v. N.C. Dep't of State Treasurer*, 364 N.C. 205, 211, 695 S.E.2d 91, 95 (2010).

However, the Public Records Act anticipates that exceptions may apply, *see* N.C.G.S. § 132-1(b) (2013) ("[I]t is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost *unless otherwise specifically provided by law*." (emphasis added)), and indeed, the General Assembly has enacted a separate statute applicable to court records, *id.* § 7A-109 (2013); *see Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 463, 515 S.E.2d 675, 685 (1999) (acknowledging that court records are public records but finding that "[t]he public's right of access to court records is provided by N.C.G.S. § 7A-109(a), which specifically grants the public the right to inspect court records in criminal and civil proceedings").[3]  Section 7A-109(a) addresses the maintenance of court records and provides, *inter alia*, that "these records shall be open to the inspection of the public during regular office hours."  N.C.G.S. § 7A-109(a).  This statute incorporates themes similar to those found in the Public Records Act, such as liberal access, *compare* N.C.G.S. § 132-6(a) ("*Every* custodian . . . shall permit *any record* . . . to be inspected and examined at reasonable times . . . and shall, *as promptly as possible*, furnish copies thereof . . . ." (emphases added)), *with id.* § 7A-109(a) ("[R]ecords shall be open to the inspection of the public.") *and* -109(d) (stating that the provisions

---

[3] In *Virmani*, this Court was careful to observe that North Carolina courts "always retain the necessary inherent power granted them by Article IV, Section 1 of the North Carolina Constitution to control" their records "in the proper circumstances" and that "the power to do so is a necessary power rightfully pertaining to the judiciary as a separate branch of the government, and the General Assembly has 'no power' to diminish it in any manner."  350 N.C. at 463, 515 S.E.2d at 685 (quoting N.C. Const. art. IV, § 1).

therein are intended "to facilitate public access to court records"); promotion of good government, *compare id.* § 132-6(b) (2013) ("No person requesting to inspect and examine public records, or to obtain copies thereof, shall be required to disclose the purpose or motive for the request."), *with id.* § 7A-109(a)(6) (describing the statute's purpose as "provid[ing] a reservoir of information useful to those interested in measuring the effectiveness of the laws and the efficiency of the courts in administering them"); and affordability, *compare id.* § 132-1(b) (records shall be provided for "free or at minimal cost," defining the latter as "the actual cost of reproducing . . . the information"), *with id.* § 7A-109(d) (providing that the contracts "with third parties to provide remote electronic access to the records by the public" shall limit fees to those necessary for "reasonable cost recovery").

Nevertheless, the Public Records Act and section 7A-109 are not identical, and if

> "there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized . . . ; but, to the extent of any necessary repugnancy between them, the special statute . . . will prevail over the general statute . . . ."

*Nat'l Food Stores v. N.C. Bd. of Alcoholic Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966) (quoting 82 C.J.S. *Statutes* § 369, at 839-40 (1953)) ; *see also Krauss v. Wayne Cty. Dep't of Soc. Servs.*, 347 N.C. 371, 378, 493 S.E.2d 428, 433 (1997); *McIntyre v. McIntyre*, 341 N.C. 629, 631, 461 S.E.2d 745, 747 (1995). While the Public

Records Act applies generally to state government records, section 7A-109 is specifically limited to court records. Consistent with our holding in *Virmani*, we conclude that section 7A-109 controls plaintiffs' request for these records. Accordingly, we find that the Court of Appeals erred by concluding that the Public Records Act provided the legal basis for granting plaintiffs' request and that section 7A-109 was inapposite to an analysis of access to such records.

We next consider whether the material requested by plaintiffs is available to them under section 7A-109 by means other than a nonexclusive contract with the AOC, as set out in subsection 7A-109(d). Because this statute does not refer to the "custodian" of the pertinent records, we need not address arguments that are dependent on a determination of who is the custodian of ACIS and the records included in that database. Instead, we observe that section 7A-109(a) focuses on providing broad access to the public to review and copy court records that are not legally protected from disclosure. In 1997, subsequent to enactment of the Public Records Act, the North Carolina General Assembly added subsection (d) to section 7A-109, providing that "[i]n order to facilitate public access to court records, except where public access is prohibited by law, the [AOC] Director may enter into one or more nonexclusive contracts under reasonable cost recovery terms with third parties to provide remote electronic access to the records by the public." *See* Act of June 11, 1997, ch. 199, sec. 1, 1997 N.C. Sess. Laws 389, 390.

The parties dispute the meaning and import of subsection (d). Defendants have argued consistently that the legislature intended that subsection (d) be the exclusive means of remote electronic distribution of and access to ACIS. Plaintiffs, by contrast, argue that the addition of subsection (d) was meant to create an additional means of access, allowing the public the option of either seeking a copy of ACIS through the Public Records Act or contracting for remote electronic access to it pursuant to N.C.G.S. § 7A-109(d). The Court of Appeals agreed with plaintiffs. *LexisNexis*, ___ N.C. App. at ___, 754 S.E.2d at 228-29 ("The plain language of this subsection simply allows the AOC to offer an additional method of access to 'court records' via 'remote electronic access.' " (brackets omitted)).

In resolving this dispute, we are mindful that "[t]he cardinal principle of statutory construction is that the intent of the legislature is controlling." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (quoting *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978)). Here, we find guidance in the General Assembly's addition of subsection (d) and its conditions specifically relating to remote electronic access to court records. Just as a more specific statute will prevail over a general one, *see, e.g.*, *In re Testamentary Tr. of Charnock*, 358 N.C. 523, 529, 597 S.E.2d 706, 710 (2004), a specific provision of a statute ordinarily will prevail over a more general provision in that same statute, *see, e.g.*, *State ex rel. Utils. Comm'n. v. Lumbee River Elec. Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 633, 670 (1969). Moreover, just as it "is true *a fortiori*" that a specific statute prevails over

a general one "when the special act is later in point of time," *Nat'l Food Stores*, 268 N.C. at 629, 151 S.E.2d at 586 (quoting 82 C.J.S. *Statutes* § 369, at 842-43), the later addition of a specific provision to a pre-existing more general statute indicates the General Assembly's most recent intent, *see Adair v. Orrell's Mut. Burial Ass'n*, 284 N.C. 534, 541, 201 S.E.2d 905, 910 (1974) ("The conflicting provisions in . . . the statute first enacted must yield to the provision of [the later enacted statute], since the later statute represents the latest expression of legislative will and intent."), *appeal dismissed*, 417 U.S. 927, 94 S. Ct. 2637, 41 L. Ed. 2d 231 (1974). While subsection 7A-109(a) applies to court records in general, later-added subsection (d) focuses narrowly on court records maintained in electronic form. Accordingly, we conclude that the General Assembly intended that the nonexclusive contracts authorized in section 7A-109(d) be the sole means of remote electronic access to ACIS.

We note in closing that our holding does not deny anyone access to any public record not otherwise restricted by law. Rather, this decision acknowledges the General Assembly's intent to limit the methods of access to one narrow category of court records. Access to the public information maintained in ACIS remains fully available by obtaining the physical records from the appropriate Clerk of Court, through the "green screen" terminal maintained in the local courthouse, or by means of a contract with the AOC for remote access. Nor will our holding impose an undue financial burden on those seeking access to criminal records. *See* N.C.G.S. § 7A-109(d) (authorizing the AOC to enter into remote electronic access contracts that

incorporate "reasonable cost recovery terms"). North Carolina's robust tradition that "strongly favors the release of public records to increase transparency in government" endures. *State Emps. Ass'n*, 364 N.C. at 214, 695 S.E.2d at 97.

This case is remanded to the Court of Appeals for consideration of plaintiffs' remaining issues on appeal.

REVERSED AND REMANDED.

Justice ERVIN did not participate in the consideration or decision of this case.