IN THE SUPREME COURT OF NORTH CAROLINA

No. 294A18

Filed 14 August 2020

STATE OF NORTH CAROLINA

v.

JEFFERY DANIEL WAYCASTER

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 260 N.C. App. 684, 818 S.E.2d 189 (2018), affirming a judgment entered on 16 May 2017 by Judge Gary M. Gavenus in Superior Court, McDowell County. Heard in the Supreme Court on 6 November 2019.

*Joshua H. Stein, Attorney General, by Alexander Walton, Assistant Attorney General, for the State-appellee.*

*Dylan J.C. Buffum, for defendant-appellant.*

DAVIS, Justice.

North Carolina's Habitual Felons Act references three ways by which the State may prove a defendant's prior convictions for the purpose of establishing that he is a habitual felon. The issue in this case is whether these methods of proof set out in the Act are exclusive. Because we conclude that the General Assembly intended for the means of proof mentioned in the Act to be nonexclusive, we affirm the decision of the

Court of Appeals on that issue. Defendant also raised an additional issue relating to whether the trial court committed plain error by allowing the introduction of hearsay evidence during his trial. We now conclude that discretionary review of this additional issue was improvidently allowed.

**Factual and Procedural Background**

On 22 July 2014, defendant was sentenced to 30 months of supervised probation after pleading no contest to a charge of felony larceny. The terms of defendant's probation were modified on 3 September 2015, and pursuant to these modifications, he submitted to electronic monitoring and was required to wear an ankle monitor that tracked his location. In addition, although not under house arrest, defendant was required to comply with the curfew set by his primary probation officer, Matthew Plaster.

Defendant's electronic monitoring involved three different pieces of equipment: an ankle monitor worn by him, a Global Positioning System beacon that tracked the monitor, and a charger for the ankle monitor. The beacon was kept at defendant's home, and his probation officer would receive text messages or email alerts if he was not at home during his curfew. His probation officer would also receive notification if defendant tampered with his ankle monitor strap by cutting it off or otherwise trying to remove it. These alerts were sent from BI Total Monitoring (BI), a company with which the North Carolina Department of Public Safety contracted to install and maintain the monitoring equipment assigned to probationers such as defendant.

On 24 September 2015, the probation officer on duty, David Ashe, received a text message alert from BI notifying him that defendant had tampered with his ankle monitor strap. Officer Ashe attempted to call defendant but received no answer. After consulting the BI computer program to locate the ankle monitor, Officer Ashe went to the last known location of the monitor and discovered that it had been cut off and left in a ditch approximately eight feet from a road that was located a few miles away from defendant's home. Upon returning to his office, Officer Ashe verified that the monitor he had found in the ditch was, in fact, the one that had been given to defendant, and he submitted a report of the incident to Officer Plaster.

On 26 October 2015, defendant was indicted on charges of interfering with an electronic monitoring device and attaining the status of a habitual felon. A trial was held in Superior Court, McDowell County, beginning on 16 May 2017. The jury returned a verdict of guilty on the charge of interfering with an electronic monitoring device on that same day. On the following day, the habitual felon phase of the trial began. The habitual felon indictment charged defendant with attaining habitual felon status based upon three prior felony convictions in McDowell County: (1) a 4 June 2001 conviction for felonious breaking and entering; (2) a 18 February 2010 conviction for felonious breaking and entering; and (3) a 22 July 2014 conviction for safecracking. At trial, the State admitted into evidence certified copies of the judgments for the latter two convictions in order to prove their existence.

With regard to the 4 June 2001 conviction, however, the prosecutor stated to

the court that he had been informed by the Clerk of Court's office "that they didn't have the original" judgment associated with that conviction. In an effort to prove the existence of this conviction, the State called Melissa Adams, the Clerk of Court for McDowell County, as a witness. The State then introduced as an exhibit a computer printout from the Automated Criminal/Infraction System (ACIS). Adams testified that ACIS is a statewide computer system relied upon by courts and law enforcement agencies for accessing information regarding a defendant's criminal judgments, offense dates, and conviction dates. She further stated that the information contained in ACIS is taken from court records such as criminal judgments and manually entered into the database by an employee in the Clerk of Court's office. The ACIS printout offered by the State showed that defendant had been convicted of felonious breaking and entering on 4 June 2001, and Adams testified that the printout was a "certified true copy of the ACIS system."

When the State formally moved to introduce the ACIS printout into evidence as proof of defendant's 4 June 2001 felony conviction, defense counsel objected, arguing that the ACIS printout was not a true copy of the actual judgment but rather "simply a computer printout of data entered at some time in the past by someone of what purports to be a judgment." Defense counsel contended that the ACIS printout was therefore insufficient to prove defendant's 2001 conviction. The trial court overruled the objection, stating that "ACIS is a way in which the State can introduce true copies of judgments entered in the system, and it's admissible under the rules of

evidence."

The jury found that defendant had attained the status of a habitual felon, and the trial court sentenced him to a term of imprisonment of 38 to 58 months. Defendant appealed to the Court of Appeals.

Before the Court of Appeals, defendant made two arguments. First, he asserted that the trial court committed plain error by admitting hearsay evidence to establish that the ankle monitor found in the ditch belonged to him. Second, he contended that the trial court erred by allowing the ACIS printout to be introduced into evidence as proof of his 2001 conviction for the purpose of establishing that he was a habitual felon.

With regard to the first issue, defendant asserted that the trial court had plainly erred in allowing Officer Ashe to testify that he had verified through BI that the ankle monitor he found in the ditch belonged to defendant. Defendant contended that Officer Ashe's testimony constituted inadmissible hearsay because it was based entirely upon communications from BI and the State had failed to provide an adequate foundation to allow such information to be admitted pursuant to the business records exception to the hearsay rule set out in N.C.G.S. § 8C-1, Rule 803(6). Relying on its own precedent, the Court of Appeals rejected this argument and held that "hearsay statements based on 'GPS tracking evidence and simultaneously prepared reports are admissible under the business records exception to the hearsay rule.'" *State v. Waycaster*, 260 N.C. App. 684, 689, 818 S.E.2d 189, 193 (2018) (quoting

*State v. Gardner*, 237 N.C. App. 496, 499, 769 S.E.2d 196, 198 (2014)).

As for the second issue, defendant argued that the trial court had improperly allowed the ACIS printout to be used as proof of his 2001 conviction because N.C.G.S. § 14-7.4 contained the exclusive methods for proving prior convictions in a proceeding to determine habitual felon status. The Court of Appeals likewise rejected this argument based on its determination that the ACIS printout was "sufficient evidentiary proof of defendant's 4 June 2001 conviction under the Habitual Felon Act." *Waycaster*, 260 N.C. App. at 691, 818 S.E.2d at 195. The Court of Appeals stated that "ACIS 'duplicates the physical records maintained by each Clerk and constitutes the collective compilation of all records individually entered by' clerks of court." *Id.* (quoting *LexisNexis Risk Data Mgmt. Inc. v. North Carolina Admin. Office of the Courts*, 368 N.C. 180, 181, 775 S.E.2d 651, 652 (2015)). The Court of Appeals concluded that the use of the ACIS printout to prove defendant's prior conviction did not violate N.C.G.S. § 14-7.4 due to the fact that the statute "is permissive and does not exclude methods of proof that are not specifically delineated in the Act." *Id.* at 692, 818 S.E.2d at 195.

In a separate opinion concurring in part and dissenting in part, Judge Murphy concurred in the majority's decision with respect to the first issue but dissented from the portion of the majority's opinion relating to the issue of whether the admission of the ACIS printout satisfied N.C.G.S. § 14-7.4. He expressed his belief that the State was required by the statute to prove defendant's prior convictions by stipulation or

by introducing either the actual judgments of the convictions or certified copies thereof. *Waycaster*, 260 N.C. App. at 693, 818 S.E.2d at 196 (Murphy, J., dissenting). He further stated that, in his view, the State had failed to demonstrate the exercise of reasonable diligence in seeking to obtain the actual judgment relating to the 4 June 2001 conviction. *Id.* at 695–96, 818 S.E.2d at 197–98. For this reason, he expressed his belief that the ACIS printout did not qualify as admissible secondary evidence pursuant to Rule 1005 of the North Carolina Rules of Evidence. *Id.* at 695, 818 S.E.2d at 197 (citing N.C.G.S. § 8C-1, Rule 1005 (2019)).

On 11 September 2018, defendant appealed to this Court as of right on the basis of the dissent. Defendant also filed a petition for discretionary review in which he requested that this Court review the first issue decided by the Court of Appeals regarding the use of hearsay evidence to establish that the ankle monitor located in the ditch belonged to him. This Court allowed the petition for discretionary review on 30 January 2019.

**Analysis**

North Carolina's Habitual Felons Act states, in pertinent part, that "[a]ny person who has been convicted of or pled guilty to three felony offenses . . . is declared to be a habitual felon and may be charged as a status offender . . . ." N.C.G.S. § 14-7.1(a) (2019). In such cases, "[t]he trial for the substantive felony is held first, and only after defendant is convicted of the substantive felony is the habitual felon indictment revealed to and considered by the jury." *State v. Cheek*, 339 N.C. 725, 729,

453 S.E.2d 862, 864 (1995) (citing N.C.G.S. § 14-7.5). During the habitual felon phase

of the trial, "the proceedings shall be as if the issue of habitual felon were a principal

charge." N.C.G.S. § 14-7.5. When a defendant is found to have attained the status of

a habitual felon, "the felon must . . . be sentenced at a felony class level that is four

classes higher than the principal felony for which the person was convicted; but under

no circumstances shall an habitual felon be sentenced at a level higher than a Class

C felony." *Id*. § 14-7.6.

The Habitual Felons Act also references several specific methods of proof for

establishing the existence of a defendant's prior felony convictions. Subsection 14-7.4

states as follows with regard to this subject:

> In all cases where a person is charged under the provisions of this Article
> with being an habitual felon, the record or records of prior convictions of
> felony offenses shall be admissible in evidence, but only for the purpose
> of proving that said person has been convicted of former felony offenses.
> A prior conviction may be proved by stipulation of the parties or by the
> original or a certified copy of the court record of the prior conviction. The
> original or certified copy of the court record, bearing the same name as
> that by which the defendant is charged, shall be prima facie evidence
> that the defendant named therein is the same as the defendant before
> the court, and shall be prima facie evidence of the facts set out therein.

N.C.G.S. § 14-7.4.

In this appeal, defendant does not argue that the ACIS printout was

inadmissible on the grounds of hearsay or lack of authentication. Instead, defendant's

sole contention is that the methods referenced in the statute for proving the existence

of a prior felony conviction—that is, by stipulation or by the introduction of either the

original or a certified copy of the prior judgment—were intended by the General Assembly to be exclusive. Defendant's argument therefore raises an issue of statutory interpretation.

It is well established that "[i]n matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (citations omitted). Thus, "[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 811, 517 S.E.2d 874, 878 (1999) (citation omitted). However, "where a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, and the courts will interpret the language to give effect to the legislative intent." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 389 (1978) (citations omitted).

Defendant argues that the language utilized by the General Assembly in N.C.G.S. § 14-7.4 clearly expresses a legislative intent that the modes of proof set out therein be exclusive, contending that no logical reason would have existed for the legislature to identify certain methods of proof if it intended that the State be permitted to prove defendant's prior convictions by other means as well. The State, conversely, asserts that N.C.G.S. § 14-7.4 is permissive—rather than mandatory—

with respect to the issue of how a defendant's prior convictions may be established

and that such convictions may be proven by means of any admissible evidence.

In construing the language utilized by the General Assembly in N.C.G.S. § 14-

7.4, we do not write on a clean slate. To the contrary, we construed identical statutory

language in *State v. Graham*, 309 N.C. 587, 308 S.E.2d 311 (1983). In that case, the

defendant pled guilty to four counts of felonious breaking and entering. During

sentencing, the trial court determined that the defendant had prior convictions

punishable by more than sixty days imprisonment and therefore found the existence

of an aggravating factor pursuant to N.C.G.S. § 15A-1340.4(e) of the Fair Sentencing

Act. The information concerning the defendant's prior convictions was presented to

the court in the form of testimony from a sheriff's deputy "who had been informed by

the law enforcement authorities in North Carolina and New York [and] advise[d] the

court as to the defendant's conviction record." *Id*. at 593, 308 S.E.2d at 316.

On appeal, the defendant asserted that the trial court had erred in finding the

aggravating factor based on his prior convictions because the State had failed to

introduce a certified copy of his criminal record. *Id*. at 592, 308 S.E.2d at 315. In

addressing his argument, we were required to interpret the following statutory

language in the Fair Sentencing Act:

> A prior conviction may be proved by stipulation of the parties or by the
> original or a certified copy of the court record of the prior conviction. The
> original or certified copy of the court record, bearing the same name as
> that by which the defendant is charged, shall be prima facie evidence
> that the defendant named therein is the same as the defendant before

the court, and shall be prima facie evidence of the facts set out therein.

*Id*. at 592, 308 S.E.2d at 315–16 (quoting N.C.G.S. § 15A-1340.4(e) (1983) (repealed 1994)).

Like defendant in the present case, the defendant in *Graham* asserted that this statutory language allowed his prior convictions to be proven only by stipulation or by the introduction of either the original or a certified copy of the court record of the prior convictions. *Id*. at 592–93, 308 S.E.2d at 315–16. We rejected defendant's argument, stating the following:

> We disagree that these are the exclusive methods by which prior convictions may be shown. As we emphasized in *State v. Thompson*, 309 N.C. 421, 307 S.E. 2d 156 (1983), this Court and the Court of Appeals have repeatedly held that the enumerated methods of proof of N.C. Gen. Stat. § 15A-1340.4(e) are permissive rather than mandatory. We recognize that the more appropriate way to show the "prior conviction" aggravating circumstance would be to offer authenticated court records, for such records establish a prima facie case. However, the legislature did not intend to bind the State and the trial court by precluding other means of proof. Clearly the conviction could have been proven by the deputy's testimony as to his own personal knowledge or by defendant's admission. While here the deputy's testimony was hearsay, the record indicates that the defendant took the stand and admitted the prior convictions. Not only do we find that the defendant's testimony before the court constituted an acceptable form of proof of his prior convictions, but his admissions also cured any defect caused by the hearing of the deputy's testimony.

*Id*. at 593, 308 S.E.2d at 316 (citations omitted); *see also Thompson*, 309 N.C. at 424, 307 S.E.2d at 159 ("We agree with that portion of the Court of Appeals' opinion holding that the language of G.S. § 15A-1340.4(e) is permissive rather than mandatory respecting methods of proof. It provides that prior convictions 'may' be

proved by stipulation or by original certified copy of the court record, not that they *must* be. The statute does not preclude other methods of proof.").

Given that the key language of N.C.G.S. § 14-7.4 is identical to the statutory language this Court construed in *Graham*, we are unable to discern any valid basis for adopting a different construction in the present case. *See State v. Rose*, 327 N.C. 599, 606, 398 S.E.2d 314, 317 (1990) ("We find no justifiable reason for giving a different interpretation to the identical language found in the two statutes.").

Moreover, we believe that such a reading of N.C.G.S. § 14-7.4 is logical. This Court has repeatedly interpreted the General Assembly's usage of the word "may" as having a permissive—as opposed to a mandatory—effect. *See, e.g.*, *Campbell v. First Baptist Church*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979) ("We recognize that . . . the use of 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act." (citation omitted)); *Rector v. Rector*, 186 N.C. 618, 620, 120 S.E. 195 (1923) ("The word 'may,' as used in statutes, in its ordinary sense, is permissive and not mandatory." (citation omitted)).

Furthermore, we recognize that there are a number of different ways in which a defendant's prior convictions may be proven in a given case. It would make little sense for the legislature to have limited the universe of available methods of proof to merely those few expressly referenced in the statute.

We also reject defendant's contention that the State's interpretation of N.C.G.S. § 14-7.4 would render superfluous the statutory language utilized by the

General Assembly that expressly mentions certain discrete methods of proof. This argument ignores the fact that the statute gives the State the benefit of a rebuttable presumption if the defendant's prior convictions are, in fact, proven by the admission of original or certified copies of the judgments evidencing those convictions. The statute makes clear that if the State elects to utilize these modes of proof, there will exist "prima facie evidence that the defendant named therein is the same as the defendant before the court, and . . . prima facie evidence of the facts set out therein." N.C.G.S. § 14-7.4. This presumption does not apply if alternative methods are utilized by the State to prove the defendant's prior convictions. Thus, while the admission of either the actual judgment or a certified copy may be the preferred methods of proof, they are not the only permissible means of establishing the defendant's prior convictions.

Based on its apparent inability to obtain the actual judgment of defendant's 4 June 2001 conviction, the State opted to prove the existence of that conviction by introducing an ACIS printout. This Court recently explained the nature and purpose of the ACIS database as follows:

> The Automated Criminal/Infraction System (ACIS) is an electronic compilation of all criminal records in North Carolina. While the North Carolina Administrative Office of the Courts (AOC) administers and maintains ACIS, the information contained in ACIS is entered on a continuing, real-time basis by the individual Clerks of Superior Court, or by an employee in that Clerk's office, from the physical records maintained by that Clerk. Any subsequent modifications to that information are under the exclusive control of the office of the Clerk that initially entered the information, so that

personnel in one Clerk's office cannot change records entered into ACIS by personnel in a different Clerk's office. In other words, the information in ACIS both duplicates the physical records maintained by each Clerk and constitutes the collective compilation of all records individually entered by the one hundred Clerks of Court.

*LexisNexis*, 368 N.C. at 181, 775 S.E.2d at 652.

During the habitual felon phase of defendant's trial, the Clerk of Court, Melissa Adams, testified as to the process used for entering information derived from criminal records into ACIS. She stated that the ACIS database contains information that includes the name, judgment, offense date, and conviction date for a defendant and that this information is manually entered into the ACIS system by herself or other employees of the Clerk's office. Adams further testified that the ACIS database is accessible statewide and that the information contained therein is relied upon by courts and law enforcement agencies in the discharge of their duties. She stated that her recordkeeping duties included ensuring that information from court records was accurately entered into the ACIS database. Upon being presented with the ACIS printout showing defendant's 4 June 2001 conviction for felonious breaking and entering, Adams testified that the printout was "a certified true copy of the ACIS system . . . that shows the conviction."

As noted above, defendant does not contend that the ACIS printout constituted inadmissible hearsay or that it was not properly authenticated. He does argue, however, that the State failed to comply with the best evidence rule contained in Rule

1005 of the North Carolina Rules of Evidence before seeking the admission of the printout into evidence. Rule 1005 states as follows:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

N.C.G.S. § 8C-1, Rule 1005.

Defendant argues that in the present case the State sought to prove the contents of the original judgment of his 4 June 2001 conviction, which is an "official record" for purposes of Rule 1005, and the ACIS printout constituted "secondary evidence" of those contents. Based on this reasoning, defendant asserts that such secondary evidence in lieu of the original judgment or a certified copy would have been admissible only if the State had first demonstrated the exercise of "reasonable diligence" as required by Rule 1005. Only then, defendant asserts, could "other evidence of the contents" of the judgment be offered in its place. N.C.G.S. § 8C-1, Rule 1005.

But defendant's argument collapses given our determination that the methods of proof listed in N.C.G.S. § 14-7.4 are not exclusive. Although defendant is correct that the ACIS printout was not the original judgment of his prior conviction or a certified copy of the judgment, neither was required to be produced. Rather, the State was permitted to prove the fact of defendant's 4 June 2001 conviction by other means.

The State was not using the ACIS printout to prove the *contents* of the original judgment of defendant's prior conviction. Instead, the printout was utilized simply to show that the conviction had occurred. Thus, the State was not required to comply with the reasonable diligence provision contained in Rule 1005 for the simple reason that Rule 1005 has no application here.

The dissent reaches a different conclusion in an analysis that can only be described as self-contradictory. While initially claiming to accept the proposition that the methods of proof set out in N.C.G.S. § 14-7.4 are not exclusive, the dissent then proceeds to repeatedly express a preference for the use of original judgments, or certified copies thereof, to the exclusion of other ways of proving a defendant's prior convictions.

The dissent's analysis reflects a misunderstanding of the best evidence rule. While not actually saying so, the dissent appears to be operating under the misconception that the best evidence rule limits the State's proof to the "best" available evidence bearing upon the fact at issue. But such an interpretation of the rule is incorrect.

As this Court has made clear, "[t]he best evidence rule applies *only* when the contents of a writing are in question." *State v. Clark*, 324 N.C. 146, 156, 377 S.E.2d 54, 60 (1989) (emphasis added). As a leading commentator has noted, "[i]t is sometimes stated, as if it were a general rule of evidence, that when a fact is to be proved the best evidence must be produced which the nature of the case admits. There

is, however, no such general rule[.]" 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 253, at 997 (7th ed. 2011) (footnotes omitted).

The dissent ignores the distinction between a conviction and a judgment. The issue here was *not* what was contained in the 4 June 2001 written judgment. Rather, the question was whether defendant had been convicted of the offense memorialized in the judgment. As a result, the State was not required to prove the contents of the written judgment. Instead, the State used the ACIS printout as an alternative method of proving the *conviction itself*. Thus, the best evidence rule does not apply here.

While the use of the original judgment may well be—as the dissent asserts— the preferred method of proving a prior conviction, it is by no means the only permissible way of doing so. Therefore, given that § 14-7.4 is nonexclusive, any other type of admissible evidence may be used to establish a defendant's prior conviction.

As discussed above, this Court explained the nature and purpose of the ACIS database in *LexisNexis*. In our opinion, we made clear that this database serves as "an electronic compilation of all criminal records in North Carolina" and "duplicates the physical records maintained by each Clerk[.]" *LexisNexis*, 368 N.C. at 181, 775 S.E.2d at 652. As such, the ACIS database serves as a court record—albeit an electronic one. As a court record in and of itself, the ACIS printout was not merely "other evidence" of the contents of defendant's original judgment regarding his 4 June 2001 conviction so as to invoke the best evidence rule contained in Rule 1005. It

simply makes no sense to suggest that the best evidence rule should operate to preclude the admission into evidence of one court record under the misguided belief that the record in question is nothing more than evidence of the contents of a separate court record.

The dissent fails to offer a persuasive reason why a printout from this database is not admissible pursuant to N.C.G.S. § 14-7.4. Instead, the dissent merely notes that an original judgment is more reliable because it is reviewed not only by the Clerk of Court but also by the trial judge and by counsel. But even assuming that the original judgment is, in fact, the most reliable way of proving a prior conviction, N.C.G.S. § 14-7.4 does not require that the most reliable method be utilized. Instead, it permits the use of any admissible evidence on this issue. If the most reliable method of proof (i.e., the original judgment or a certified copy) was required, then the modes of proof set out in the statute *would* be exclusive.

In short, the dissent cannot have it both ways. Either the methods of proof contained in N.C.G.S. § 14-7.4 are exclusive or they are not. Our decision today makes clear that they are not exclusive—a ruling with which the dissent purports to agree. Because the State used a valid alternative method of proving defendant's prior conviction by introducing a printout of a court record that contained this information, the best evidence rule never became applicable.

Furthermore, the dissent's assertion that based on our decision the State will have no reason to ever offer the original judgment or a certified copy ignores the

rebuttable presumption expressly stated in N.C.G.S. § 14-7.4. As noted above, in order for the State to obtain the benefit of that presumption, it must use these specified methods of proof, which serves as an incentive for it to do so.

While the dissent speculates about the possibility of error in the ACIS database as the result of a mistake in data entry,[1] nothing prohibits a defendant from making a similar argument to the jury during a habitual felon proceeding and expressly noting the prosecutor's failure to introduce the original judgment of the defendant's prior conviction. If the State wishes to use a less persuasive method of proof, it certainly has the right to do so subject to the risk that the jury will find that the evidence upon which it chose to rely is not credible. In other words, the State's choice of a less optimal method of proof goes to the weight—rather than the admissibility— of the evidence.

Finally, we note that in the event the General Assembly wishes to limit the methods that are available to the State for proving a defendant's prior convictions, it is, of course, free to do so by amending N.C.G.S. § 14-7.4. Based on the current language of the statute, however, we are satisfied that the admission of the ACIS printout for this purpose under the circumstances set out in the record before us was

---

[1] We observe that neither at trial nor on appeal has defendant asserted that the information contained in the ACIS database regarding his 4 June 2001 conviction was inaccurate. Moreover, while the dissent claims that the database contains little to no information about the underlying offense for which a defendant was convicted, no such additional information is necessary under N.C.G.S. § 14-7.4. Instead, all that is required is a showing that the conviction occurred.

permissible.

## Conclusion

For the reasons set out above, we affirm the decision of the Court of Appeals with respect to the issue of whether the admission of the ACIS printout for the purpose of establishing defendant's habitual felon status was proper. As for the issue raised in defendant's petition for discretionary review regarding whether the admission of Officer Ashe's testimony constituted plain error, we conclude that discretionary review was improvidently allowed. Therefore, the decision of the Court of Appeals on that issue remains undisturbed.

AFFIRMED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Chief Justice BEASLEY, concurring.

Although I agree with the majority's conclusion that the State may prove the existence of a defendant's prior felony convictions by methods other than those expressly set out in the Habitual Felons Act, I write separately to note that as the State introduced the ACIS printout to prove the contents of the ACIS report, the State was required to comply with Rule 1005 of the North Carolina Rules of Evidence.

The majority mischaracterizes the purpose for introducing the ACIS printout, attempting to distinguish between the contents of the ACIS printout and its introduction solely to show that a prior conviction had occurred. The Habitual Felon Statute provides that "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon." N.C.G.S. § 14-7.1(a) (2019). Thus, the State must prove that the defendant did, in fact, commit three prior felony offenses. To do so requires the court to consider the contents of the record to be introduced for the purpose of confirming "that said person has been convicted of former felony offenses." N.C.G.S. § 14-7.4.

ACIS is "an electronic compilation of *all* criminal records in North Carolina" that "both duplicates the physical records maintained by each [Superior Court] Clerk and constitutes the collective compilation of all records individually entered by the one hundred Clerks of Court." *LexisNexis Risk Data Mgmt. v. N.C. Admin. Office of the Courts*, 368 N.C. 180, 181, 775 S.E.2d 651, 652 (2015) (emphasis added). Thus,

the State introduced the ACIS printout to prove the *contents* of the ACIS report.

As the dissent correctly states, quoting N.C.G.S. § 8C-1, Rule 1101, "[t]he rules of evidence apply at a trial on a habitual felon indictment in the same way that they apply to 'all actions and proceedings in the courts of this State.' " Here, because the State introduced the ACIS printout as evidence of defendant's prior convictions, it must comply with the rules of evidence. The dissent, however, misconstruing the intended purpose of the ACIS printout, fails to properly apply Rule 1005.

Rule 1005 provides that the contents of "a document authorized to be recorded or filed and actually recorded or filed, *including data compilations in any form . . .* may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original." N.C.G.S. § 8C-1, Rule 1005 (emphasis added). "If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given." *Id.*

The dissent treats the ACIS printout as a document introduced to prove the contents of the original judgment. Instead, the State introduced the ACIS printout to prove that a judgment had occurred—information that is contained in the ACIS report itself. This is an important distinction because Rule 1005 is self-referential. The certified copy contemplated by the Rule is of the document offered for admission itself—here, that is the ACIS report. Thus, the second sentence of Rule 1005, which allows for the introduction of "other evidence" only if neither a certified copy nor a

copy testified to be correct by a person who has compared it to the original can be obtained by reasonable diligence, has no applicability here.

During trial, the State called the Clerk of the McDowell County Superior Court as a witness. The Clerk identified the ACIS printout as "a certified true copy of the ACIS system" and explained that the information in the ACIS printout was consistent with the actual judgment. The State, however, admitted that the original judgment could not be located. As the information in ACIS is entered by the Clerk or "an employee in that Clerk's office," *LexisNexis*, 368 N.C. at 181, 775 S.E.2d at 652, the Clerk could not testify to the accuracy of the ACIS printout without confirming that she (1) entered that exact information into the system or (2) compared the printout to the judgment. She did not claim to have taken either action.

Although the Clerk could not testify to the accuracy of the ACIS printout introduced at trial, the copy could be authenticated pursuant to Rule 1005 by certification in compliance with Rule 902. The Rule provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to" certified copies of public records. N.C.G.S. § 8C-1, Rule 902(4). An unsealed public record is considered certified when it bears the signature of the custodian or other person authorized to make the certification, who certifies that the data compilation is correct. *Id.* Here, the custodian of ACIS, the Clerk of Court for McDowell County, certified that the ACIS printout was a true copy. Thus, the ACIS printout is a self-authenticating document properly introduced pursuant to Rule 1005.

I respectfully concur.

Justice MORGAN joins in this concurring opinion.

Justice EARLS concurring in part and dissenting in part.

Identical language in two statutes about how a prior conviction may be proved should be interpreted the same way even if one statute has been repealed and even if the language in the repealed statute applies to sentencing proceedings while in the statute at issue here, the language applies to trials on the charge of having obtained the status of a habitual felon. *Compare* N.C.G.S. § 15A-3040.4(e) (Supp. 1993) (repealed 1994) ("A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction."), *with* N.C.G.S. § 14-7.4 (2019) ("A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction."). I can even accept that this Court should follow its precedents in *State v. Graham*, 309 N.C. 587, 308 S.E.2d 311 (1983), and *State v. Thompson*, 309 N.C. 421, 307 S.E.2d 156 (1983), on the question of how that statutory language should be interpreted, despite the fact that neither party cited nor discussed these precedents in their briefs in this Court. What I cannot accept is the proposition that the North Carolina Rules of Evidence, and in particular, Rules 1002 through 1005, do not apply to the State's use of the ACIS printout to prove Mr. Waycaster's prior convictions beyond a reasonable doubt in this case.

The rules of evidence apply at a trial on a habitual felon indictment in the same way that they apply to "all actions and proceedings in the courts of this State." N.C.G.S. § 8C-1, Rule 1101(a) (2019). A trial on a habitual felon indictment is not a

sentencing proceeding. It is a trial in front of a jury in which the rules of evidence apply. Ironically, the trial court applied other rules of evidence to exclude other documents the State offered at trial to prove Mr. Waycaster's prior convictions. When the State offered to admit into evidence a copy of a certified original "Order on Violation of Probation" to prove the same conviction alleged to be shown by the ACIS printout, the trial court excluded the evidence under Rule 403. The trial court therefore recognized that N.C.G.S. § 14-7.4 does not expressly or implicitly repeal the rules of evidence in this context. Nevertheless, in one citation-free paragraph, the majority holds that the State was not required to comply with the requirements of Rule 1005 because it is not applicable here. That holding is incorrect.

> Rule 1005 states:
>
> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

N.C.G.S. § 8C-1, Rule 1005. The majority reasons that this rule does not apply because the State was not using the ACIS printout to prove the contents of the original judgment but rather to prove that a conviction had occurred. But such sleight of hand, purporting to meaningfully distinguish between the contents of a court record and the fact of a conviction, should have no place in our jurisprudence.

First, as the dissenting opinion in the Court of Appeals pointed out,[1] the State certainly thought it was offering the ACIS printout to prove the contents of the original judgment of conviction:

> The best evidence rule applies here because the ACIS printout was admitted to prove the contents of a judicial record (i.e. a "writing") that the State indicated was unavailable. In response to Defendant's objection, the State admitted that they had originally intended to use Defendant's judgment and commitment record to prove his conviction, but were using the ACIS printout (submitted as State's Exhibit 4) because the original could not be found.
>
>> *The State*: I'll tell you Your Honor that when we were gathering these documents, 4A had come from microfilming and they said that they didn't have the original of 4. So 4 is the record of the original judgment.

*State v. Waycaster*, 260 N.C. App. 684, 694–95, 818 S.E.2d 189, 197 (2018) (Murphy, J., concurring in part and dissenting in part). Moreover, the ACIS printout has no source of information independent of the court file. In other words, without "the contents" of the original judgment of conviction, there would be no ACIS printout showing the fact of the conviction. *LexisNexis Risk Data Mgmt. Inc.*, 368 N.C. 180, 181, 775 S.E.2d 651, 652 (2015) ("[T]he information contained in ACIS is entered on a continuing, real-time basis by the individual Clerks of Superior Court, or by an employee in that Clerk's office, from the physical records maintained by that Clerk.").

Finally, the testimony in this case is further proof that this is an illusory

---

[1] I agree with and incorporate by reference the arguments made and positions taken in the dissenting opinion below. I have generally limited this opinion to the few remaining points worth adding.

distinction.  The Court of Appeals summarized that testimony as follows:

> The Clerk of McDowell County Superior Court, the individual tasked with maintaining the physical court records in McDowell County, testified that the printout was a certified true copy of the information in ACIS regarding this judgment.  She also explained the information was 'the same as the judgment' and affirmed it 'is a different way of recording what's on a judgment[.]' The Clerk's certification of the ACIS printout as a true copy of the original information is significant due to her responsibility and control over the physical court records, copies, and ACIS entries, as described in *LexisNexis Risk Data Mgmt. Inc.*

*State v. Waycaster*, 260 N.C. App. at 691, 818 S.E.2d at 195.  The truth is that, in this case, the State is attempting to prove the fact of a prior judgment of conviction against defendant, and when the original court file was not available, the State reasonably looked to other sources of information to prove that a judgment convicting the defendant of crimes in the past existed.  Rule 1005 is applicable here.  The burden under that rule is not extreme, the party offering the evidence simply must make a showing that a copy of the official record "cannot be obtained by the exercise of reasonable diligence."  N.C.G.S. § 8C-1, Rule 1005.

The majority states that "[a]s a court record in and of itself, the ACIS printout was not merely 'other evidence' of the contents of defendant's original judgment regarding his 4 June 2001 conviction so as to invoke the best evidence rule contained in Rule 1005."  To the contrary, based on the testimony in this case and our prior decisions, that is exactly what an ACIS printout is:  a court employee takes the

-4-

original judgment and enters its information into a computer. Pretending that this is somehow separate, substantive evidence of defendant's conviction, rather than merely a secondary rendition of the contents of an official judgment, abrogates the best evidence rule in the absence of any legislative intent to do so.[2]

We have long held that introducing an original judgment into evidence is the "preferred method for proving a prior conviction." *State v. Maynard*, 311 N.C. 1, 26, 316 S.E.2d 197, 211 (1984) (citing *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981)). By holding that the best evidence rule does not apply here, that principle is severely undermined, making it a function of the State's discretion whether to offer the ACIS printout or a certified copy of the original judgment as proof of the prior conviction.

The danger of the majority's reasoning is two-fold. First, the fallacious logic employed to reach this result would apply to every instance in which a party seeks to prove a prior conviction for any purpose whatsoever. If the fact that a conviction has occurred is different from the contents of a court judgment for the purposes of the applicability of Rule 1005, then there never needs to be a showing that due diligence was pursued to find the original court records.[3] Any evidence, not the best evidence,

---

[2] The concurring opinion's attempt to create a distinction between the "contents of the original judgment" and information "to prove that a judgment has occurred" fares no better. They are the same thing. The status offense of being a habitual felon requires proof of prior convictions. Here, the ACIS printout is being offered as evidence of a prior judgment of conviction, but it is not the official record. It does not matter whether you call it "information proving that a judgment has occurred" or proof of "the contents of the original judgment."

[3] It is important to remember, as noted above, that Rule 1005 does not completely

is admissible. The majority effectively rewrites Rule 1005 to say "the contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original, *unless the official record is a judgment of conviction, in which case the official record is not needed.*" The General Assembly in its wisdom may wish to rewrite the statute that way, but this Court should not.

Second, the ACIS printout is not as reliable as the official record. Though this Court has stated that ACIS "duplicates" the physical records maintained by the clerk's office, *LexisNexis Risk Data Mgmt. Inc.*, 368 N.C. at 181, 775 S.E.2d at 652, that is only true when the records are completely and accurately entered into the database. It is undeniable that there is a potential for a data entry error. A criminal judgment is prepared by a clerk, reviewed, signed by a judge, and scrutinized by counsel for each party. However, similar procedural safeguards do not exist to guarantee the accuracy and completeness of the data entered into ACIS. That data is not verified by a third party after the staff member of the clerk's office has entered it into the system. An ACIS printout is not the judicial record of the criminal trial

---

prohibit a party from offering into evidence an ACIS printout to prove the contents of a court record; it simply requires that the party make a showing that the original or a certified copy of the original record is unavailable after the "exercise of reasonable diligence." N.C.G.S. § 8C-1, Rule 1005.

but rather a new record generated by the clerk's office independent of the criminal proceeding.

If there was to be a data entry error, proving a negative, for example, that a particular individual was not convicted of a particular crime on a certain date in the past, would be extremely difficult, depending on the circumstances. Even with a defendant's testimony that he was not convicted of a particular offense, the ACIS printout provides precious few details to allow an effective rebuttal of the truth or falsity of the information contained therein. This is the ACIS printout introduced into evidence in this case:

```
580 MCDOWELL                    ICA INQUIRY 01  01CR 001216     FILM: 0200100023
DISPOSED                        R  S DOB/AGE       CR     FILING DATE: 030901
WARRANT                         W  M 12011982 DL#:
WAYCASTER,JEFFERY,DANIEL                        CIT#:          TRIAL DATE: 042402
213 TRIPLE J MHP       LOT #23         CSLR:      CSLRC:              AM
MARION          NC  28752  DEF ATTY: NEIGHBORS,RUSSELL       TYP: A      VRA:
CHG/ARRN OFFN: F BREAKING AND OR ENTERING (F)         14-54(A)
COMPLAINANT: SHOOK,D                        SFF ISSUED: 030801   SERVED: 030801
OFFN DATE: 022001    ARRN DATE:         MOTIONS DATE:        DISP DATE: 060401
CONT. D: 08 S: 00 C: 00 NR: 00 INT?:   FRM:   RSONCO:    GANG REL:   DV CV: N

PLEA VER MOD     FINE        COSTS    WCC    REST      JUDGE    PAID   TO-BE-PAID
 GU  GU  JU  $          $  190.00  .  $   7009.00     DS      NO        060403
CONV OFFN: F BREAKING AND OR ENTERING (F)           14-54(A)         CAB:
SENT LEN: 005 M - 006 M  SENT TYPE: C       CONS F/JGMT:
PROB: 024 M      SUPERVISED   WITHDRAWN:      APPEALED TO SUPERIOR:
AREA CD:   ACCD:   HWY:       V LIC:          TRANS TO SUPERIOR:
CDL: N  CMV: N  HAZ: N    TRP/DIST:    V ST:    V TYP:      APPELLATE:
NO CONTACT W T HOLLIFIELD DR CL CAC 420.00


ARREST DATE: 030801 CHECK DIGIT: LW0638E SID: NC0913517A LID:
NEXT#:                PF2 - NAME INQUIRY                ADDL CHARGES: Y
```

This particular printout contained a case number, the complainant's name, an offense date and disposition date, and the fine and restitution ordered, but very little

information about the underlying offense. The ACIS printout was not signed by a judge. No judge, prosecutor, or court reporter was identified in the printout.

An official court record has significantly greater indicia of reliability and hence, the best evidence rule is a part of our law. Secondary evidence of the content of the original is only admissible if the State establishes that the original or a copy thereof is unavailable. *See* N.C.G.S. § 8C-1, Rule 1005. In this case, the State failed to show that the original judgment, or a copy of the original judgment, could not be obtained through reasonable diligence. *See State v. York*, 347 N.C. 79, 91, 489 S.E.2d 380, 387 (1997) ("The best evidence rule requires that secondary evidence offered to prove the contents of a recording be excluded whenever the original recording is available"). Rule 1005 exists for a reason, and this Court exceeds its authority by unilaterally declaring that the rule will not apply for this purpose in these proceedings.

Having concluded that the Rule 1005 applies to this trial and to the evidence of Mr. Waycaster's prior conviction, I agree with the dissent below that the evidence in this case failed to establish that the State engaged in due diligence to find the official record of the original court judgment. *Waycaster*, 260 N.C. App. at 695, 818 S.E.2d at 197 ("Here, there was an inadequate foundation regarding the State's exercise of 'reasonable diligence' to obtain a copy of the 4 June 2001 judgment record.") (Murphy, J., concurring in part and dissenting in part). Moreover, because this was the only evidence of Waycaster's prior conviction, the erroneous admission of this evidence without the required findings was prejudicial. *See* N.C.G.S. § 15A-

1443(a) (2019) (stating that to establish reversible error a defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial").

I would reverse the decision of the Court of Appeals on the question of whether the trial court properly admitted the ACIS printout in this case without the foundation required by Rule 1005 of the North Carolina Rules of Evidence. We should vacate the judgment and habitual felon verdict and remand for a new trial on that charge. Accordingly, I concur with that portion of the majority opinion which holds that N.C.G.S. § 14-7.4 (2019) must be interpreted as permissive and not exclusive with regard to the methods of proof of prior convictions. I agree that an ACIS printout is admissible as evidence of prior convictions under that statute.

However, I do not read N.C.G.S. § 14-7.4 as evincing any intent to abrogate the requirements of Rules 1002 to 1005 of the North Carolina Rules of Evidence. Reading these statutes *in pari materia*, N.C.G.S. § 14-7.4 is not exclusive and permits use of the ACIS printout as evidence of prior convictions, but because the ACIS printout is wholly derivative of the contents of a judgment, it must also comply with the best evidence rule. Therefore, I respectfully dissent from that part of the majority opinion which holds that the best evidence rule does not apply to an ACIS printout when offered as evidence of a prior conviction.

Justice HUDSON joins in this opinion concurring in part and dissenting in part.