ARROWOOD, Judge.
*685 Jeffery Daniel Waycaster ("defendant") appeals from judgments entered on his convictions of interfering with an electronic monitoring device and attaining the status of a habitual felon.
I. Background
On 26 October 2015, defendant was indicted for interfering with an electronic monitoring device, and for attaining the status of a habitual felon. The matter came on for trial in McDowell County Superior Court before Judge Gary M. Gavenus on 15 May 2017. The State's evidence tended to show that, on 24 September 2015, defendant was subject to supervised probation due to a conviction for felony larceny that was entered 22 July 2014. As a modified condition of his probation, defendant submitted to electronic monitoring.
Probation Officer Matthew Plaster ("Officer Plaster") supervised defendant. Officer Plaster testified that defendant's electronic monitoring equipment was installed prior to 24 September 2015 by BI Total Monitoring, the company contracted to install and monitor the equipment. Officer Plaster described the equipment as follows. BI Total Monitoring's electronic monitoring equipment includes an ankle monitor, a beacon that used a global positioning system ("GPS") to track the monitor, and a charger for each probationer. The ankle monitor and beacon "have serial numbers on them that are specific to" the probationer they monitor. BI Total Monitoring's computer software, BI Total Access, keeps logs of which serial numbers are assigned to each probationer.
When an ankle monitor is not in the beacon's range, it transmits a GPS signal. These signals enable the probation officer to log onto a computer program to see, "within a fairly accurate distance[,]" where a probationer is located. When a probationer removes the ankle monitor, BI Total Monitoring notifies the probation office. Officer Plaster testified that this technology "works really well" and their office has "not had much issue with dead spots and stuff." After the equipment's installation on defendant's person and at his residence, Officer Plaster inspected it to ensure "it was on properly."
*686 On 24 September 2015, the "on call" probation officer, Probation Officer David Ashe ("Officer Ashe"), received an alert from BI Total Monitoring that defendant's ankle monitor's strap had been tampered with. Unable to reach defendant by phone, Officer Ashe used the GPS to locate the monitor miles from defendant's residence, in a ditch approximately *192 8 feet from a road. He testified that he took the ankle monitor to his office, where he verified it was the one assigned to and installed on defendant.
Defendant did not present any evidence.
On 16 May 2017, the jury found defendant guilty of interfering with an electronic monitoring device.
On 17 May 2017, the habitual felon phase of the trial began. The indictment charged defendant with habitual felon status based on three convictions in McDowell County: a 4 June 2001 conviction for felonious breaking and entering on or about 20 February 2001, a 18 February 2010 conviction for felonious breaking and entering on or about 29 October 2009, and a 22 July 2014 conviction for safecracking on or about 27 June 2013. The State offered true copies of judgments related to the 18 February 2010 and 22 July 2014 convictions as evidence.
As proof of the 4 June 2001 conviction, the State called the Clerk of McDowell County Superior Court, Melissa Adams, as a witness. She identified a printout of a record entered into the Automated Criminal/Infraction System ("ACIS") that showed that, on 4 June 2001, defendant was convicted in McDowell County case 01 CR 1216 of felony breaking and entering for an offense that occurred on 20 February 2001. Defendant objected to the submission of the ACIS printout, arguing it was not the best evidence in this case because it was not a copy of the judgment. The trial court overruled defendant's objection, explaining: "ACIS is a way in which the State can introduce true copies of judgments entered in the system, and it's admissible under the rules of evidence."
The jury found defendant had attained habitual felon status. The trial court sentenced defendant to an active term of incarceration for 38 to 58 months.
Defendant appeals.
II. Discussion
Defendant makes two arguments on appeal. First, he argues the trial court committed plain error by admitting hearsay evidence to establish that the ankle monitor found in the ditch was the monitor assigned to *687 defendant. Second, he argues the trial court erred when it allowed an ACIS printout into evidence as proof of defendant's 2 June 2001 conviction for felony breaking and entering. We address each argument in turn.
A. Hearsay Evidence
Defendant argues the trial court plainly erred when it allowed Officer Ashe to provide testimony based on GPS tracking evidence and simultaneously prepared reports to establish that the ankle monitor that he found was the same monitor that had been installed on and assigned to defendant. Defendant contends this testimony constituted hearsay that was not admissible under any exception. We disagree.
Officer Ashe testified that the 24 September 2015 alert he received from BI Total Monitoring identified defendant as the probationer to whom the monitor at issue was assigned. Defendant objected to this statement as hearsay, but was overruled. Subsequently, Officer Ashe testified that he verified the monitor was the one assigned to and installed on defendant. Defendant did not object. Therefore, he lost the benefit of his initial objection and failed to preserve this issue for appellate review. See State v. Maccia, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984) ("[W]hen ... evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.") (citations omitted). Nonetheless, defendant contends the admission of Officer Ashe's testimony based on GPS tracking evidence and simultaneously prepared reports amounts to plain error.
Under plain error review, an issue that was not preserved "may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) (2018). "[P]lain error review ... is normally limited to instructional and evidentiary error." State v. Lawrence , 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (citation omitted). To show plain error, a "defendant must convince this Court not only that there was error, but that absent the error, the jury probably would *193 have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted). Accordingly, the error must have been "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotation marks omitted).
Rule 801 of the North Carolina Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter *688 asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017). Hearsay is generally not admissible at trial, unless otherwise allowed by statute or the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802. Rule 803(6) of the North Carolina Rules of Evidence establishes an exception to the general exclusion of hearsay for business records, which the rules define as:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity, and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit or by document under seal under Rule 902 of the Rules of Evidence made by the custodian or witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. Authentication of evidence by affidavit shall be confined to the records of nonparties, and the proponent of that evidence shall give advance notice to all other parties of intent to offer the evidence with authentication by affidavit. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
N.C. Gen. Stat. § 8C-1, Rule 803(6). Electronically stored business records are admissible if:
(1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.
State v. Jackson , 229 N.C. App. 644, 650, 748 S.E.2d 50, 55 (2013) (quoting State v. Crawley, 217 N.C. App. 509, 516, 719 S.E.2d 632, 637 (2011) ). These records need not be authenticated by the person who made them. State v. Wilson, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985) (citations omitted).
*689 Our Court has previously held that hearsay statements based on "GPS tracking evidence and simultaneously prepared reports are admissible under the business records exception to the hearsay rule." State v. Gardner , 237 N.C. App. 496, 499, 769 S.E.2d 196, 198 (2014) (citation omitted). However, defendant argues that the testimony at issue does not meet the requirements of the business records exception because the probation officers that testified did not lay a proper foundation "to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy" as required under our caselaw. We disagree.
In both Gardner and Jackson , we held that the probation officers' testimony was sufficient to lay a proper foundation for statements based on GPS tracking evidence and simultaneously prepared reports. Id. at 501, 769 S.E.2d at 199 ; Jackson , 229 N.C. App. at 650-51, 748 S.E.2d at 55-56. Here, as in Gardner , one of the probation officers that testified, Officer Plaster, testified concerning the operation of the electronic monitoring device worn by defendant and demonstrated his familiarity with the system through his testimony. Additionally, he testified that the information transmitted through the GPS technology is stored in a software database *194 that the probation office uses to conduct its business. He also testified that the program is an accurate source of information that "works really well." We hold that his testimony established a sufficient foundation of trustworthiness for the tracking evidence to be admissible as a business record. Therefore, the trial court did not err when it permitted Officer Ashe to testify that the tracking data in this case verified that the ankle monitor at issue had been assigned to defendant. Because the trial court did not err, the trial court did not commit plain error.
B. Evidentiary Requirements Under N.C. Gen. Stat. § 14-7.4
Defendant argues the trial court erred when it allowed an ACIS printout to be admitted as proof of a prior conviction to establish defendant's habitual felon status. Specifically, he argues the admission of the printout violated the best evidence rule, which requires secondary evidence offered to prove the contents of a recording be excluded whenever the original recording is available. See State v. York , 347 N.C. 79, 91, 489 S.E.2d 380, 387 (1997) (citing N.C. Gen. Stat. § 8C-1, Rules 1002 - 1004 (2017) ).
While this Court has previously concluded, in an unpublished opinion, that criminal history printouts from the ACIS database were admissible evidence to prove a prior felony under N.C. Gen. Stat. § 14-7.4, see *690 State v. Aultman , No. COA15-242, 244 N.C. App. 777, 781 S.E.2d 532, 2016 WL 47970 at *6 (N.C. Ct. App. Jan. 5, 2016) (unpublished), it is well settled that "[a]n unpublished opinion establishes no precedent and is not binding authority[.]" Long v. Harris, 137 N.C. App. 461, 470, 528 S.E.2d 633, 639 (2000) (citation, internal quotation marks, and brackets omitted). Nonetheless, we agree with the reasoning set out in Aultman and hold that printouts from the ACIS database were admissible evidence to prove a prior felony under N.C. Gen. Stat. § 14-7.4, and, thus, were not barred by the best evidence rule, for the reasons that follow.
Under the Habitual Felon Act ("the Act"), "when a defendant has previously been convicted of or pled guilty to three non-overlapping felonies," and commits a new felony under North Carolina law, the "defendant may be indicted by the State in a separate bill of indictment for having attained the status of being an habitual felon." State v. Wells , 196 N.C. App. 498, 502, 675 S.E.2d 85, 88 (2009) (citation omitted); N.C. Gen. Stat. § 14-7.1 (2017). "The trial for the substantive felony is held first, and only after defendant is convicted of the substantive felony is the habitual felon indictment revealed to and considered by the jury." State v. Cheek , 339 N.C. 725, 729, 453 S.E.2d 862, 864 (1995) (citing N.C. Gen. Stat. § 14-7.5 ). "Upon a conviction as an habitual felon, the court must sentence the defendant for the underlying felony as a Class C felon." State v. Penland , 89 N.C. App. 350, 351, 365 S.E.2d 721, 722 (1988) (citing N.C. Gen. Stat. § 14-7.6 ) (citation omitted).
The Act sets out the following evidentiary requirements for proving prior felonies:
In all cases where a person is charged ... with being an habitual felon, the record or records of prior convictions of felony offenses shall be admissible in evidence, but only for the purpose of proving that said person has been convicted of former felony offenses. A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction.
N.C. Gen. Stat. § 14-7.4. A "certified copy" under N.C. Gen. Stat. § 14-7.4 is "a copy of a document or record, signed and certified as a true copy by the officer whose custody the original is [entrusted]." State v. Gant , 153 N.C. App. 136, 143, 568 S.E.2d 909, 913 (2002) (citing Black's Law Dictionary 228 (6th ed. 1990) ) (emphasis and alteration omitted). There is no recognizable distinction between certified copies and true copies. Id. "[A]lthough section 14-7.4 contemplates the most appropriate means to prove prior convictions for the purpose of establishing habitual felon status, it does not exclude other methods of proof." State v. Wall , 141 N.C. App. 529, 533, 539 S.E.2d 692, 695 (2000) (citation omitted).
*195 *691 Our Supreme Court has explained ACIS is:
an electronic compilation of all criminal records in North Carolina. While the North Carolina Administrative Office of the Courts (AOC) administers and maintains ACIS, the information contained in ACIS is entered on a continuing, real-time basis by the individual Clerks of Superior Court, or by an employee in that Clerk's office, from the physical records maintained by that Clerk. Any subsequent modifications to that information are under the exclusive control of the office of the Clerk that initially entered the information, so that personnel in one Clerk's office cannot change records entered into ACIS by personnel in a different Clerk's office. In other words, the information in ACIS both duplicates the physical records maintained by each Clerk and constitutes the collective compilation of all records individually entered by the one hundred Clerks of Court.
LexisNexis Risk Data Mgmt. Inc. v. North Carolina Administrative Office of Courts, 368 N.C. 180, 181, 775 S.E.2d 651, 652 (2015). In a case not involving the Habitual Felon Act, our court held that a "printed-out email, which contains a screenshot of the AOC record of the conviction, is 'a copy' of a 'record maintained electronically' by the Administrative Office of the Courts, which is sufficient to prove [a] prior conviction under N.C. Gen. Stat. § 15A-1340.14(f)(3)" to determine prior record level for sentencing. State v. Best , 202 N.C. App. 753, 757, 690 S.E.2d 58, 61 (2010).
In the instant case, the ACIS printout was sufficient evidentiary proof of defendant's 4 June 2001 conviction under the Habitual Felon Act. ACIS "duplicates the physical records maintained by each Clerk and constitutes the collective compilation of all records individually entered by" clerks of court. LexisNexis Risk Data Mgmt. Inc., 368 N.C. at 181, 775 S.E.2d at 652. The Clerk of McDowell County Superior Court, the individual tasked with maintaining the physical court records in McDowell County, testified that the printout was a certified true copy of the information in ACIS regarding this judgment. She also explained the information was "the same as the judgment" and affirmed it "is a different way of recording what's on a judgment[.]" The Clerk's certification of the ACIS printout as a true copy of the original information is significant due to her responsibility and control over the physical court records, copies, and ACIS entries, as described in LexisNexis Risk Data Mgmt. Inc .
*692 The Best Evidence Rule does not bar the admission of this ACIS printout merely because the original judgment was unaccounted for at trial. The plain reading of N.C. Gen. Stat. § 14-7.4 and our habitual felon jurisprudence makes clear that the statute is permissive and does not exclude methods of proof that are not specifically delineated in the Act. Wall , 141 N.C. App. at 533, 539 S.E.2d at 695 (citation omitted). Moreover, the Clerk of McDowell County Superior Court certified the information as a true copy. The trial court did not err by permitting the State to offer the ACIS printout as evidence of the 4 June 2001 conviction.
III. Conclusion
For the forgoing reasons we hold the trial court did not commit error.
NO ERROR.
Judge CALABRIA concurs.
Judge MURPHY concurs in part and dissents in part in a separate opinion.