An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-517

Filed 18 March 2026

Craven County, Nos. 19CR000557-240, 19CR050915-240

STATE OF NORTH CAROLINA

v.

EDDIE EARL WATERS

Appeal by Defendant from judgment entered 3 February 2021 by Judge Joshua W. Willey, Jr. in Craven County Superior Court. Heard in the Court of Appeals 14 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Mary L. Maloney, for the State.*
>
> *Gilda C. Rodriguez for the defendant.*

WOOD, Judge.

Eddie Earl Waters ("Defendant") appeals from judgment entered 3 February 2021 upon jury convictions of possession of a controlled substance on the premises of a penal institute, and attaining the status of habitual felon. After failing to enter a timely oral or written notice of appeal, Defendant filed a petition for *writ of certiorari,*

which another panel of this Court granted on 15 May 2024. We address the merits of Defendant's arguments on appeal.

Defendant raises five issues on appeal. First, Defendant argues the trial court erred when it denied his motion to dismiss the charge of possession of a controlled substance on the premises of a penal institution because the State presented insufficient evidence. Second, Defendant argues the trial court erred by admitting State's Exhibits 3D, 3E, and 4 because insufficient chain of custody evidence was presented. Third, Defendant argues the trial court erred by failing to dismiss the charge of attaining habitual felon status because the State presented insufficient evidence for one of the predicate felonies. Fourth, Defendant argues the trial court erred by admitting State's Habitual Felon Exhibit 3 because it was not properly authenticated and is illegible. Fifth, Defendant argues he received ineffective assistance of counsel because trial counsel failed to object to evidence and failed to make a motion to dismiss for the charge of habitual felon for insufficient evidence. For the reasons stated herein, we conclude Defendant received a fair trial free from error and dismiss his ineffective assistance of counsel argument without prejudice to his right to file a motion for appropriate relief.

## I. Factual and Procedural Background

On 25 March 2019, Correctional Officer Ashley Norris ("Officer Norris") of the Craven Correctional Facility ("Craven Correctional") observed Defendant "out of area." On this day, Officer Norris was watching inmate movements throughout the

facility and witnessed Defendant coming from the Core dorm. Officer Norris was able to identify Defendant as being "out of area" by the color of the wristband he was wearing. Inmates at Craven Correctional each wear a colored wristband to signal to which of the four dorms—Core, Hatteras, Ocracoke, or Pamlico—they are assigned. Defendant wore a red wristband identifying him as an Ocracoke dorm resident. As a resident of the Ocracoke dorm, Defendant was not permitted to be in the Core dorm area, prompting Officer Norris to stop Defendant and ask what he was doing. Defendant did not give "much of an answer," so Officer Norris asked Defendant to step into the Hatteras dorm hallway, away from other inmates.

Officer Norris performed a "pat frisk search" on Defendant during which three folded pieces of paper fell to the floor. The three folded pieces of paper were collected as evidence and submitted for testing, which revealed they contained buprenorphine, commonly known as Suboxone. On 5 August 2019, Defendant was indicted on the felony charge of possessing a controlled substance on the premises of a penal institution and of attaining the status of habitual felon.

On 2 February 2021, the first phase of Defendant's trial began with testimony from Officer Norris, who testified about the pat frisk search and observing three pieces of folded paper fall to the floor. Officer Norris initially stated he had told Defendant to put his hands on the wall. He could tell Defendant had something in his palm against the wall because "his left hand was on the wall solid, hard, like you couldn't pull it away." Officer Norris testified when he "took [Defendant's] hand,

pulled it down [from the wall] in a bent wrist and put his hands behind his back. Three papers fell on the floor, three folded up pieces of paper." When asked on direct examination whether he "actually saw" the papers fall to the ground, he answered:

> [Officer Norris]: Yes.
>
> Q: All right. Did you see where those three pieces of paper came from?
>
> [Officer Norris]: From his hand. When he pulled his hand out of his pocket and put his hand on the wall.
>
> Q: All right. Did they fall from his hand as he pulled from his pocket, or was his hand on the wall already?
>
> [Officer Norris]: His hands were on the wall. They were in the palm of his hand to make a pocket on the wall (indicating). It's a common move with inmates.

When asked what happened after he observed the pieces of paper fall to the ground Officer Norris stated, "I'm not really remembering what happened. I know I put my foot on the papers" to "keep [Defendant] from grabbing them or trying to get them back or whatever."

On cross-examination, Officer Norris explained he had "misspoke" slightly on direct examination and clarified that during the pat frisk, after Defendant initially put both hands up on the wall, Defendant reached back down into his left pocket while his right pocket was being searched and then returned his left hand to the wall. It was then, after Defendant had reached into his left pocket and returned his hand to the wall, that Officer Norris noticed the stiffness of Defendant's arm and pulled Defendant's left hand away from the wall, at which time the folded pieces of paper

fell to the ground. This account is consistent with State's Exhibit 3C, Officer Norris' written statement taken on the day of the incident.

Officer Norris testified that he could not remember who picked up the pieces of paper, he or the other officer assisting him whose name he could not recall. He testified he believed it was him who picked them up because that is what he had written in his statement. Officer Norris then testified he placed the pieces of paper into evidence locker number eight and did not access the locker or handle the evidence again.

Next, Sergeant Lyndsey Moses ("Sergeant Moses") of the Craven County Sheriff's Office testified. Sergeant Moses explained that she was dispatched to Craven Correctional, and upon arrival, a copy of Officer Norris' written statement of the incident was provided to her. Sergeant Moses testified the evidence she collected consisted of an "envelope containing three folded up pieces of paper. Inside of the little pieces of paper were small, thin orange or excuse me, yellowish colored strips." Sergeant Moses testified that after collecting the evidence, she signed a "chain of custody form through their paperwork and [] then took the evidence to the Craven County Sheriff's Crime Lab and entered [it] into our lab and [then] went to the magistrate office and took out the charges." Sergeant Moses did not have a copy of the chain of custody form from Craven Correctional but testified she remembered signing one. A printout of the crime lab evidence sheet was admitted into evidence as State's Exhibit 2. Sergeant Moses identified State's Exhibit 3, as the "manila

envelope that I placed my evidence in before entering it into evidence locker number 15." Sergeant Moses further identified State's Exhibit 3A as the envelope she had received back from the crime lab. State's Exhibits 3 and 3A were admitted over Defendant's objection citing lack of chain of custody prior to Sergeant Moses receiving them.

Sergeant Moses also identified State's Exhibits 3B, 3C, 3D, 3E, 3F, and 4. State's Exhibit 3B was identified as the prison personal property and inventory sheet which listed "[t]hree strips of Suboxone" and was signed by Officer Norris on the date of the incident. State's Exhibit 3C was identified as Officer Norris' written statement detailing what happened and where he placed the evidence once he collected it. Sergeant Moses identified State's Exhibit 3D as the three folded pieces of paper she collected from Craven Correctional and sent to the crime lab for analysis, and she identified State's Exhibit 3E as a small vial containing other evidence she sent to the crime lab for testing. State's Exhibit 3F was identified as a report from the crime lab.

Lastly, State's Exhibit 4 was identified as another crime lab report denoting case number "2019-5708" and the date of offense as 25 March 2019. The crime lab report marked as State's Exhibit 4 stated the items submitted were "three pieces of plastic wrap containing three tiny pieces of orange film and Craven Correctional paperwork and officer report" were submitted and the orange film was analyzed and found to contain buprenorphine. The trial court admitted State's Exhibits 3B, 3C,

3D, 3E, and 4 into evidence without objection. State's Exhibit 3F was not admitted into evidence.

Defendant did not present evidence. At the conclusion of all evidence, Defendant's counsel made a motion to dismiss the charge of possession of a controlled substance on the premises of a penal institute for insufficient evidence, which the trial court denied. The jury found Defendant guilty of the charge, and the trial moved forward to its second phase to determine whether Defendant had attained the status of habitual felon.

The State called Sergeant Moses back to testify and clarify portions of the prior judgments entered as State's Habitual Felon Exhibits ("State HF Exhibit") 1, 2, and 3. Defendant did not object to any portion of the admission of State's HF Exhibits 1 and 2, but he did object to State's HF Exhibit 3 stating it was not properly authenticated and was illegible. The trial court overruled the objection and allowed all State HF Exhibits to be published to the jury. All State HF Exhibits were certified true copies of prior felony judgments against Defendant. During closing arguments Defendant's counsel argued State's HF Exhibit 3 was illegible and could not be deciphered beyond a reasonable doubt.

During jury instructions the trial court listed the relevant information from each judgment admitted as State's HF Exhibits 1, 2, and 3 in that order:

> First, on August 20, 2007, the defendant in the Beaufort County Superior Court was convicted of the felony of possession of a Schedule 2 controlled substance that was

committed on November 10, 2005 in violation of the law of the State of North Carolina.

Second, on October 4, 2000, the defendant in the Beaufort County Superior Court was convicted of the felony of possession with intent to sell or deliver marijuana which was committed on April 6, 2000 in violation of the laws of the State of North Carolina.

And third, that on October 20, 1997, the defendant in the Beaufort County Superior Court was convicted of the felony of possession with intent to sell and deliver marijuana that was committed on March 15, 1997 in violation of the laws of the State of North Carolina.

During deliberations, the jury submitted a note asking to see State's HF Exhibits 1, 2, and 3 and asked for the definition of habitual felon. The jury returned to the courtroom to review the original certified judgments admitted into evidence as exhibits. In reference to State's HF Exhibit 3 the jury foreperson asked:

[Foreperson]: Most of us, all but one, could not make out that page that was blurry. The exhibit that was blurry she could not read. There is no way to get a clear copy of that?

[Trial Court]: That is the exhibit.

[Foreperson]: I know. I was going to say - - I know on my part, but it's hard to make a decision with the exhibit not being clear.

On 3 February 2021, the jury found Defendant guilty of having obtained the status of habitual felon. The trial court found Defendant to be a prior felony record level six and sentenced Defendant to 125 to 162 months of imprisonment.

## II.    Analysis

Defendant raises five issues on appeal. Defendant argues the trial court erred

by admitting State's Exhibits 3D, 3E, and 4, into evidence and that the State failed to present sufficient evidence for the charge of possession of a controlled substance on the premises of a penal institution. Defendant further argues the trial court erred by admitting State's HF Exhibit 3 into evidence and that the State failed to present sufficient evidence for the charge of habitual felon. Lastly, Defendant argues he received ineffective assistance of counsel.

## A. Possession of a Controlled Substance on the Premises of a Penal Institute

Defendant argues the trial court plainly erred by admitting State's Exhibit 3D and the evidence derived from it, State's Exhibits 3E and 4, because the State did not establish that the three pieces of paper contained in State's Exhibit 3D were the alleged contraband found in Defendant's possession on the day of the incident in violation of N.C. Gen. Stat. § 8C-1, Rule 901(a). Defendant further argues the trial court erred by denying his motion to dismiss for insufficient evidence.

### 1. *Admission of State's Exhibits 3D, 3E, and 4*

Defendant concedes he did not object to the admission of State's Exhibits 3D, 3E, and 4 during trial. State's Exhibit 3D contains the three strips of paper containing buprenorphine recovered from Defendant, State's Exhibit 3E is the small vial containing the sample taken from State's Exhibit 3D for testing, and State's Exhibit 4 is the crime lab report with the results from testing State's Exhibit 3E.

"When trial counsel fails to object to the admission of evidence, the trial court's

admission of the evidence is reviewed for plain error." *State v. Clark*, 380 N.C. 204, 209, 868 S.E.2d 56, 60 (2022). To show plain error, Defendant must establish each prong of a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a "probable impact" on the outcome, meaning that "absent the error, the jury probably would have returned a different verdict." Finally, the defendant must show that the error is an "exceptional case" that warrants plain error review, typically by showing that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings."

*State v. Earley*, 298 N.C. App. 172, 184-85, 914 S.E.2d 79, 88 (2025) (quoting *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024)).

Defendant argues the State failed to "meet the first prong of the two-part test because it failed to show that the three strips of paper, State's Exhibit 3d, was the alleged contraband that was taken from [Defendant]." Specifically, Defendant argues the State did not present sufficient evidence of the chain of custody for the three pieces of paper contained in State's Exhibit 3D prior to Sergeant Moses taking possession of it because Officer Norris was unsure of some of the exact details leading up to the evidence being placed in the evidence locker. In contrast, the State argues that it sufficiently established chain of custody and the evidence contained in State's Exhibit 3D was the same evidence confiscated on the day of the incident, meeting the first prong of the test. Furthermore, the State argues Defendant has failed to argue that any material change to the evidence occurred. We agree.

"This Court has stated that a two-prong test must be satisfied before real evidence is properly received into evidence. The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." *State v. Campbell*, 311 N.C. 386, 388, 317 S.E.2d 391, 392 (1984). North Carolina Rule of Evidence 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2025).

Here, the State presented testimony from Officer Norris and his written statement from the day of the incident detailing how the contraband was found and entered in the evidence locker. Sergeant Moses further testified that the three pieces of paper contained in State's Exhibit 3D were the same as those she collected from Craven Correctional on the day of the incident. Defendant argues potential weak links in the chain of custody regarding State's Exhibit 3D, however,

> [a] detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. Further, any weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility.

*State v. Taylor*, 332 N.C. 372, 388, 420 S.E.2d 414, 424 (1992) (cleaned up). Further, "[d]etermining the standard of certainty required to show that the item offered is the same as the item involved in the incident and that it was in an unchanged condition

- 11 -

lies within the trial court's sound discretion." *State v. Garris*, 191 N.C. App. 276, 280, 663 S.E.2d 340, 345 (2008) (quoting *State v. Fleming*, 350 N.C. 109, 131, 512 S.E.2d 720, 736 (1999)). Based on the chain of custody evidence presented by Officer Norris' testimony and written statement, as well as Sergeant Moses' identification of State's Exhibit 3D as being the same as what she collected on the day of the incident, we conclude the trial court did not abuse its discretion in admitting it. As Defendant's arguments on State's Exhibits 3E and 4 hinge upon the improper admission of State's Exhibit 3D, we also conclude the trial court did not abuse its discretion by admitting them. Therefore, the trial court neither erred nor plainly erred in admitting into evidence State's Exhibits 3D, 3E, and 4.

### 2. *Insufficient Evidence - Possession of a Controlled Substance on the Premises of a Penal Institute*

Defendant argues the trial court erred by denying his motion to dismiss because the State failed to present sufficient evidence of possession of the controlled substance. Specifically, he asserts the evidence was insufficient because the State did not present: (1) security video footage of the incident; (2) testimony from the other unnamed officer who assisted with the pat frisk and transport of Defendant; and (3) sufficient chain of custody evidence to show who had possession of the evidence from the hallway as it was transported to the office where the contraband was put into the evidence locker. Defendant argues Officer Norris' account of what happened is not enough. Further, Defendant argues there was insufficient evidence to show the

substance taken from Defendant was the same substance tested by the lab.

> In considering whether to grant a motion to dismiss for insufficiency of the evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*State v. Barnes*, 229 N.C. App. 556, 559, 747 S.E.2d 912, 916 (2013) (quoting *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012)). "Substantial evidence is the same as more than a scintilla of evidence." *State v. Tucker*, 380 N.C. 234, 237, 867 S.E.2d 924, 927 (2022). The trial court must consider all evidence in the light most favorable to the State. *Barnes*, 229 N.C. App. at 559, 747 S.E.2d at 916. "When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *Tucker*, 380 N.C. at 237, 867 S.E.2d 927 (quoting *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455-56 (2000)).

We review the denial of a motion to dismiss for insufficiency of evidence *de novo*. *Barnes*, 229 N.C. App. at 559, 747 S.E.2d at 916.

"Any person who violates [N.C. Gen. Stat. §] 90-95(a)(3) on the premises of a penal institute or local confinement facility shall be guilty of a Class H felony." N.C. Gen. Stat. § 90-95(e)(9) (2025). Under N.C. Gen. Stat. § 90-95(a)(3), it is unlawful for any person to possess a controlled substance. N.C. Gen. Stat. § 90-95(a)(3) (2025). Thus, the State was required to show evidence that Defendant: (1) had possession of

a controlled substance; and (2) was on the premises of a penal institute or local confinement facility.

The State presented: (1) testimony evidence from Officer Norris describing the incident where he recovered the buprenorphine from Defendant; (2) Officer Norris' written statement from the day of the incident; (3) State's Exhibit 3D, the three folded pieces of paper containing buprenorphine; and (4) testimony evidence from Sergeant Moses identifying the evidence as the same at trial as it was on the day she retrieved it from Craven Correctional. Any weak links in the chain of custody relate only to the weight of the evidence and are for the jury's consideration. *Taylor*, 332 N.C. at 388, 420 S.E.2d at 424. Lack of surveillance video footage does not negate the other substantial evidence the State presented. After careful consideration of the record evidence, we conclude the State presented sufficient evidence to support the charge of possession of a controlled substance on the premises of a penal institution. The trial court did not err in denying Defendant's motion to dismiss.

## B. Habitual Felon

Defendant argues that although State's HF Exhibit 3, a prior felony judgment, bore a certified copy stamp, its admission violated Rule 901(a) because it was illegible and not properly authenticated. Defendant further argues the trial court erred by failing to dismiss the charge of habitual felon because the State failed to present sufficient evidence of one of the predicate felonies.

### 1. *Admission of State's HF Exhibit 3*

Defendant properly objected to the admission of State's HF Exhibit 3 on the basis of authentication; therefore, we review the "trial court's determination as to whether a document has been sufficiently authenticated *de novo* on appeal as a question of law." *State v. DeJesus*, 265 N.C. App. 279, 288, 827 S.E.2d 744, 751 (2019) (cleaned up).

> In all cases where a person is charged with being an habitual felon, the record or records of prior convictions of felony offenses shall be admissible in evidence, but only for the purpose of proving that said person has been convicted of former felony offenses.  A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction.

*State v. Waycaster*, 260 N.C. App. 684, 690, 818 S.E.2d 189, 194 (2018) (cleaned up) (quoting N.C. Gen. Stat. § 14-7.4 (2025)).  A certified copy is "a copy of a document or record, signed and certified as a true copy by the officer [in] whose custody the original is entrusted." *Waycaster*, 260 N.C. App. at 690, 818 S.E.2d at 194 (quoting *State v. Gant*, 153 N.C. App. 136, 143, 568 S.E.2d 909, 913 (2002)).

State's HF Exhibit 3 is clearly stamped as a certified copy, thus, the trial court did not err by admitting it into evidence because a certified copy is listed among "the most appropriate means to prove prior convictions for the purpose of establishing habitual felon status." *Waycaster*, 260 N.C. App. at 690, 818 S.E.2d at 194.

### 2. *Insufficient Evidence – Habitual Felon*

Defendant concedes he failed to make a motion to dismiss for insufficient evidence on the charge of habitual felon but argues nonetheless that the trial court

erred by failing to dismiss the charge because State's HF Exhibit 3 was insufficient.

A defendant in a criminal case may not argue insufficiency of the evidence as "the basis of an issue presented on appeal unless a motion to dismiss the action . . . is made at trial." N.C. R. App. P. 10(a)(3). As Defendant concedes he failed to make a motion to dismiss for insufficient evidence on this charge, we dismiss this argument because it was not preserved for appellate review.

However, we note the State did present the necessary records of prior judgments to prove Defendant had committed three prior felonies for the purpose of attaining the status of habitual felon. As discussed, the State presented three certified true copies of prior felony convictions that bear Defendant's name. *State v. Tyson*, 189 N.C. App. 408, 420-21, 658 S.E.2d 285, 293-94 (2008); N.C. Gen. Stat. § 14-7.4.

## C. Ineffective Assistance of Counsel

Defendant argues he was deprived of his right to effective assistance of counsel because trial counsel failed to object to the admission of State's Exhibits 3D, 3E, and 4, and failed to make a motion to dismiss on the charge of habitual felon for insufficient evidence.

To prevail on a claim for ineffective assistance of counsel Defendant must prove "that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). "Generally, ineffective assistance of counsel claims 'should be considered through motions for appropriate

relief and not on direct appeal.'" *State v. Cox*, 256 N.C. App. 511, 527, 808 S.E.2d 339, 349 (2017) (quoting *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001)). "Only when the cold record reveals that no further investigation is required . . . will an ineffective assistance of counsel claim be decided on the merits on direct appeal." *State v. Edgar*, 242 N.C. App. 624, 632, 777 S.E.2d 766, 771 (2015) (cleaned up).

Here, the record reveals Defendant's ineffective assistance of counsel claim is better suited for the trial court as it can "assess the allegations in light of all the circumstances known to counsel at the time of the representation." *State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000). We dismiss Defendant's ineffective assistance of counsel claim without prejudice to preserve the right to reassert it through a motion for appropriate relief.

### III. Conclusion

For the foregoing reasons, we hold Defendant received a fair trial free from error and dismiss Defendant's ineffective assistance of counsel argument without prejudice to his right to file a motion for appropriate relief.

NO ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Judges TYSON and FREEMAN concur.

Report per Rule 30(e).